### BETTMAN, Attorney General, etc v SOUTHERN SURETY CO OF N Y et

Ohio Appeals. 2nd Dist, Franklin Co

No 2419. Decided Aug 29, 1934

John W. Bricker, Attorney General, Columbus, and Thomas M. Miller, Asst. Attorney General, Canton, for plaintiff.

Hugh M. Bennett, Columbus, for Brown-Graves Company.

W. Walter Brahm, for Bessemer Company.

MONTGOMERY, J, (5th Dist),
sitting by designation.

act the business of indemnifying employers and others, in addition to any other deposit required by the laws of this state, shall deposit with the superintendent of insurance for the benefit and security of all its policyholders, $50,000.00 in bonds of the United States or of the State of Ohio, of a county, township, city or other municipality in this state, which shall not be received by the superintendent at a rate above their par value. The security so deposited may be exchanged from time to time for other securities. So long as such company continues solvent and complies with the law of this state it shall be permitted by the superintendent to collect the interest on such deposits."

In the case of State ex v Union Casualty Insurance Company, supra, the court of this district, Judge Kunkle writing the opinion, made the following announcement, as is now quoted from syllabus 3:

"Such deposit is required to be held for the primary benefit of Ohio policyholders."

Also in Hogan, Attorney General v Empire State Insurance Company, supra, at page 174 of the opinion, Judge Kunkle, again uses the following language:

"It is evident, however, that the deposit provided for in §9510, GC, was intended to be held for the benefit of the policyholders whose rights grow out of contracts made and business transacted within the state of Ohio."

## OPINION

By BARNES, J.

The question of the distribution of the deposited fund has been before the Court of Appeals of this district, under varying states of fact, in several cases.

The court below in sustaining demurrer and entering final judgment, based his conclusions upon these prior decisions. The following are the cases referred to by Judge King in his opinion:

McGhee, Attorney General v Casualty Company of America, 15 Oh Ap, 457;

Hogan, Attorney General, v Empire State Insurance Company, 8 Oh Ap, 172;

State ex v Union Casualty Company, 8 Oh Ap, 285.

Paragraph 2, §9510, GC, specifies the requirements for a foreign insurance company to do business in Ohio and the pertinent portion reads as follows:

"But a company of another state, territory, district or country, admitted to trans-

Again, in McGhee, Attorney General v Casualty Company, supra, the opinion being by Judge Allread, the principle is again announced as shown in syllabus 7, as follows:

"A construction contract and bond for work to be performed outside of Ohio, executed by the surety outside of Ohio, and accepted and delivered outside of Ohio, is not made an Ohio contract by the fact that the contractor was a resident of Ohio and signed the contract or bond in his own behalf in Ohio."

Counsel for the Bessemer Companies urge that the different facts involved under which the announcements were made in the above entitled cases, under a careful analysis, should not apply to the facts in the instant case.

It is also urged that in at least one of the cases statements were made by the

court in the opinion which are not in line with the syllabus.

Independent of any question of precedent, we now determine that the principle is applicable to the facts in the instant case.

When the Legislature declared that a foreign indemnity insurance company could not do business in Ohio until it deposited with the superintendent of insurance stipulated bonds of the par value of $50,000.00, and by other sections provided for the liquidation or disposition of this fund in the event of insolvency or failure to comply with the conditions of their contract, we can arrive at no other conclusion than that the fund is primarily for the protection of the insurance contracts authorized under the Ohio law.

In the instant case the bond was given to the Commonwealth of Pennsylvania to secure the faithful performance of a road improvement contract entered into between The Southern Construction and Supply Corporation and the Commonwealth of Pennsylvania. Under this situation, it is apparent that the road improvement contract and the bond securing same was not an Ohio contract. The defendant The Southern Surety Company did not execute the bond by virtue of any authorization of the state of Ohio. In the execution of this bond, it was not "doing business in Ohio." The Bessemer Companies had no contractual relations with The Southern Surety Company. Its rights, if any, would arise by virtue of the provisions of the bond given to the Commonwealth of Pennsylvania, wherein the Surety Company guaranteed that the contractor would comply with the conditions of his contract and would pay for all material and labor performed in the construction of said highway. If the law of Pennsylvania be the same as that of Ohio, the Bessemer Companies' right of action under the bond would be by reason of the fact that in part the bond was executed for the benefit of material men.

The Legislature of Ohio has expressly provided such rights to material men. This statutory provision would not avail the Bessemer Companies in the instant case for the reason that it would be impossible to determine that the bond securing the contract in Pennsylvania was an Ohio bond.

Under our concept of the law, the Commonwealth of Pennsylvania, by virtue of this bond, would not have the right to participate in this deposited fund in Ohio. The rights of material men can rise no higher than the entity to which the bond was given. The fact that the Bessemer Companies were Ohio corporations, or in one instance had its principal place of business in Ohio, and further, that their contract with the construction company in all its phases was an Ohio contract, would not aid their position.

We think the true test is based on whether or not the Surety Company in executing the bond was "doing business in Ohio." If such foreign corporation does not do business in Ohio, no deposit is made with the insurance commission of Ohio.

When authorization is given to do business in Ohio, and as a condition precedent, $50,000.00 in bonds was deposited, such deposit is for the protection of policyholders under policies issued by virtue of its authorization to "do business in Ohio."

The surety bond in the instant case was not executed under any Ohio authority.

The demurrer to the answer and cross-petition will be sustained. Final judgment will be entered upon the pleadings and exceptions will be allowed.

HORNBECK, PJ, and MONTGOMERY, J, concur.